**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:16-CR-30 |
| | ) | |
| ROBERT STOCHEL, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant, Robert E. Stochel's, Motion to Dismiss Based on Statute of Limitations, filed on April 20, 2016 (DE #13). For the reasons set forth below, the motion (DE #13) is **DENIED**.

BACKGROUND

Robert Stochel ("Stochel") is charged with one count of mail fraud in violation of 18 U.S.C. § 1341. According to the indictment, Stochel was an attorney that was appointed as a receiver over a corporation, Tip Top Supermarket, Inc., in 1999. (DE #1 at ¶¶ 1-3). Stochel opened a bank account for the receivership. (DE #1 at ¶ 4). He then devised a scheme to defraud the receivership beneficiaries of monies. (DE #1 at ¶ 7). The purpose of the scheme, according to the indictment, was "to obtain monies totaling approximately $331,840 by means of materially false and fraudulent pretenses, representations, promises, and material

omissions, by withdrawing those monies from the Receivership Estate for his own personal use and benefit, and preventing the parties and counsel in the *Tip Top* litigation from learning of his scheme by lulling them into a false sense of security as to whether the Receivership Account had funds sufficient to make a significant final disbursement to the Receivership Beneficiaries." (DE #1 at ¶ 8).

The indictment alleges that, once the funds had been depleted, when the receivership estate incurred a legitimate expense, Stochel deposited his own funds into the account and paid the expense with a check from the receivership account so that it appeared that the expense was being paid with the receivership estate's monies. (DE #1 at ¶ 11). The indictment further alleges that, as part of the scheme, "Stochel caused substantial delay whenever asked for an accounting of the Receivership Account, to prevent the discovery of his depletion of that account, and to lull the Receivership Beneficiaries into a fall [sic] sense of security as to the health of that account." (DE #1 at ¶ 12). According to the indictment, when asked, Stochel represented that the receivership account was sufficiently funded. (DE #1 at ¶ 13). Furthermore, during court hearings, in an effort to lull the receivership beneficiaries into a false sense of security, Stochel allegedly represented that the receivership account had a balance reflecting what it would have had if he had not depleted it. (DE #1 at ¶ 14). In an effort to

2

conceal his fraud, Stochel also represented that his fees would drain most or all of the remaining balance in the receivership account. (DE #1 at ¶ 15). And, when the receivership beneficiaries asked the court to appoint an accountant to review the financial records, Stochel filed a "Receiver's Trial Rule 60 Motion for Relief from Order of March 7, 2012," falsely representing that the receiver had adequate funds to pay the accountant. (DE #1 at ¶ 16). The Rule 60 motion, mailed on or about March 13, 2012, provides the basis for the mail fraud charge.

Stochel filed the instant motion to dismiss the indictment arguing that the indictment was not obtained until after the statute of limitations in effect on the date of the charged offense had expired. He further argues that indictment after the statute of limitations has lapsed violates the *ex post facto* clause, bill of attainder clause, and due process clause of the United States Constitution. The Government has filed a response. No reply was filed. Accordingly, the motion is ripe for adjudication.

DISCUSSION

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment shall "be a plain, concise and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). A grand jury indictment serves to protect rights granted by the Fifth Amendment, namely limiting

3

the federal government's power to hold someone to answer for a felony unless on a grand jury indictment, and the Sixth Amendment, which grants persons accused of a crime the right to be informed of the nature and cause of the accusation. *See Russell v. United States*, 369 U.S. 749, 760-61 (1962); *United States v. Glecier*, 923 F.2d 496, 499 (7th Cir. 1991). "An indictment is constitutionally sufficient and satisfies Fed. R. Crim. P. 7(c)(1) if it states the elements of the crime charged, informs the defendant of the nature of the charge so [he] may prepare a defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense." *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997) (citations omitted); *see also United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995). An exhaustive recounting of the facts surrounding the crime is not required. *Agostino*, 132 F.3d at 1189.

However, it is also true that an indictment "must be tested by its sufficiency to charge an offense." *United States v. Sampson*, 371 U.S. 75, 78-79 (1962). The Seventh Circuit noted, in *United States v. Gimble*, that:

> In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating. If the acts alleged in the indictment did not constitute a violation of the law that the defendant has been charged with violating, we must reverse any subsequent conviction based on that indictment.

4

*United States v. Gimble*, 830 F.2d 621, 624 (7th Cir. 1987).

When reviewing a motion to dismiss a criminal indictment, this Court must assume the facts alleged in the indictment are true and "must view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). Dismissing an indictment is an extraordinary measure, and the defendant's arguments will be reviewed while keeping that in mind. *See, e.g., United States v. Morrison*, 449 U.S. 361, 363 (1981)(concluding the dismissal of an indictment was unwarranted absent a constitutional infringement that substantially prejudiced defendant's case); *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997) ("Because the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step.").

"To prove mail fraud, the government must show that the defendant: (1) participated in a scheme to defraud; and (2) caused the mails to be used in furtherance of that fraudulent scheme.... it is the causing of the mails to be used in furtherance of the fraudulent scheme that constitutes the offense of mail fraud." *United States v. Barger*, 178 F.3d 844, 847 (7th Cir. 1999). The federal mail fraud statute does not reach all frauds - the use of the mail must be "part of the execution of the fraud." *Schmuch v. United States*, 489 U.S 705, 710 (1989). While a mailing is essential to a mail fraud charge, the mailing need only be "incident to an essential part of the scheme." *Schmuch*, 489 U.S

5

at 710-11 (internal citations and quotations omitted). The statute of limitations for mail fraud is five years, and begins running on the date of the mailing. 18 U.S.C. § 3282(a); *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002); *United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992).

In this case, the mailing relied upon in the indictment took place on or about March 13, 2012, and Stochel was indicted on March 16, 2016. While Stochel has argued that the statute of limitations bars this charge, there is not a statute of limitations problem – the mailing that provides the basis for the mail fraud charge occurred within five years of the indictment. *See United States of America v. McGowan*, No. 03 CR 350, 2004 WL 909745, at *1-2 (N.D. Ill. Apr. 23, 2004)(discussing why a similar argument did not pose a statute of limitations problem in the context of wire fraud). Stochel acknowledges that the statute of limitations begins on the date of the mailing but nonetheless argues that the indictment is untimely because "any alleged mailing occurred at least five (5) years and eight (8) months after Stochel withdrew money from the receivership account for his own personal use and benefit" and "almost ten (10) years after the funds were withdrawn according to the Indictment." (DE #13 at ¶¶ 7-8). The fact that the actual withdrawal of money from the receivership account occurred long before the mailing does not create a statute of limitations problem. As noted above, the statute of limitations runs from the

6

date of the mailing to the date of the indictment.  *McGowan*, 2004 WL 909745, at *1-2.  Accordingly, to the extent Stochel is arguing that the indictment violates the statute of limitations, his argument fails.

Despite Stochel's argument being framed as a statute of limitations problem, Stochel's fundamental issue is that too much time lapsed (more than 5 years) between when the last of the money was withdrawn and the mailing that provides the basis for the charge.  The lapse in time, according to Stochel, suggests that the mailing providing the basis for the charge is not part of the alleged fraudulent scheme.

Stochel concedes that a mailing that lulls victims into a false sense of security may violate the mail fraud statue even after the money has been taken if the scheme includes the lulling of victims.  *Sampson*, 371 U.S. at 80 (scheme contemplated lulling activities from the start, both before and after money was acquired); *United States v. Bach*, 172 F.3d 520, 522 (7th Cir. 1999)(finding that "the scheme was both to defraud and to retain investors' money and that the mailings charged in the indictment were indeed in furtherance of that scheme."); *United States v. Brocksmith*, 991 F.2d 1363, 1367-68 (7th Cir. 1993)("Use of the mails to lull victims into a false sense of security, we have held, violates the mail fraud statute, even if it occurs after the money has been fraudulently obtained.").

7

However, other cases have found that mailings sent after the theft itself did not further the scheme. In *United States v. Kwiat*, one of the cases Stochel relies upon, the defendants, directors of a bank, developed a scheme to defraud the bank's depositors and stockholders of their honest services. *United States v. Kwiat*, 817 F.2d 440, 443 (7th Cir. 1987). After each fraudulent mortgage loan, the bank had the mortgage recorded, and the recorder mailed the mortgage back to the bank after recording. The court found that the mailing of the recorded mortgage back to the bank "did not make the fraud possible or facilitate it." *Id.* at 443. In so deciding, the Seventh Circuit Court of Appeals noted that "there is no *mail* fraud unless the mailing is for the purpose of executing such scheme (as § 1341 itself provides) and is causally linked to the scheme's success." *Id.* (emphasis in original, internal quotations and citations omitted).

In *United States v. Walters*, another case relied upon by Stochel, Walters convinced college football players to enter into professional contracts when they were not yet eligible to do so, and then locked those post-dated contracts away and agreed to lie to the universities if any inquires were made. *United States v. Walters,* 997 F.2d 1219 (7th Cir. 1993). Walters was charged with mail fraud because the universities paid scholarships to athletes who were ineligible, and the universities, who required their athletes to verify eligibility, then sent those verifications by

mail to athletic conferences such as the Big Ten. It was those mailings, by the universities, that served as the basis for the mail fraud charges. *Id.* at 1222. The court found that the link between the defendant's fraudulent scheme and the mailings by the colleges - mailings that could not reasonably be foreseen - was too tenuous. *Id.* at 1222-23. As the court noted, "[t]he prosecutor must *prove* that the use of the mails was foreseeable, rather than calling on judicial intuition to repair a rickety case." (emphasis in original). *Id.* at 1223-24.

Similarly, in *United States v. McClain*, the defendants were engaged in a scheme to submit a fraudulent parking study to the City of Chicago and, during the course of that scheme, they sought membership in an organization (the Institutional and Municipal Parking Congress) because they believed that membership would bolster their credibility. *United States v. McClain*, 934 F.2d 822, 835 (7th Cir. 1991). However, while they received the sought-after membership, the defendants ultimately decided not to use it in their scheme. A mailing related to obtaining the membership served as the basis of the mail fraud charge, but the Seventh Circuit Court of Appeals found that the mailing must be "part of the execution of the fraud" and that "the mailing before us cannot be said to have furthered the fraud attempted by the conspirators." *Id.*

Each of these cases were decided by examining the facts,

including the nature of the scheme and the nature of the mailing. "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time...." *Schmuck v. United States*, 489 U.S. 705, 715 (1989).

In this case, Stochel argues that the indictment fails to allege how the theft of funds in 2006 can be part of the same scheme resulting in the mailing of a Rule 60 motion in 2012. While the Court agrees that it is a large gap in time, this argument ignores several allegations in the indictment itself regarding the scope of the alleged scheme. The indictment alleges a scheme that spanned from 2001 through June of 2012. (DE #1 at ¶ 7). It alleges that the scheme's purpose included lulling the victims into a false sense of security. (DE #1 at ¶ 8). And, it alleges a variety of actions by Stochel designed to achieve this goal: depositing personal funds into the receivership account to pay expenses with receivership checks, causing delay when asked for an accounting, representing that the account was sufficiently funded, representing in court hearings and pleadings that the account balance was what it should have been but for his theft, representing that the receivership account balance would be drained by his own fees, and - finally - drafting and mailing the Rule 60 motion that falsely represented that the receiver had adequate funds to pay an accountant when required. (DE #1 at ¶¶ 10-17). The indictment does not allege specific dates when each one of these

events occurred, but that is not required. The allegations of the indictment, taken in the light most favorable to the Government, suggest a lengthy scheme involving both the theft of funds and steps to hide that theft which continued until the time of the mailing of the Rule 60 motion. The five-plus year alleged break between the theft and the mailing suggested by Stochel, if true, might support his theory that there was not one lengthy scheme involving both theft and lulling, but in the context of a motion to dismiss, this Court must construe the facts in the light most favorable to the Government.

If this case proceeds to trial, the Government will be put to the task of proving that the scheme alleged in the indictment existed (meaning that the scheme contemplated both obtaining the monies by fraud and lulling his victims into believing no theft had occurred) and that the mailing in question was sent for the purpose of carrying out the scheme or attempting to do so. The gap in time between the theft of the monies and the mailing may be an obstacle to making the required showing. This Court cannot say, however, that based on the indictment before it, the Government as a matter of law will be unable to prove the alleged scheme existed.

One additional matter must be addressed. Stochel's motion alleges that the "extension of the statute of limitations" led to violations of the *ex post facto*, bill of attainder and due process clauses of the United States Constitution. (DE # 13). Other than

11

referencing the provisions themselves, no argument is set forth in the motion itself, and those constitutional provisions are mentioned nowhere in the memorandum supporting the motion. Because these arguments were not developed in any meaningful way, they cannot be addressed by the Court and are deemed waived.[1]

CONCLUSION

For the reasons set forth below, the motion to dismiss the indictment (DE #13) is **DENIED**.

**DATED: July 22, 2016**　　　　　　　　　　/s/ RUDY LOZANO, Judge
　　　　　　　　　　　　　　　　　　　　　**United States District Court**

---

[1] This does not appear to be prejudicial to Stochel. Neither the *ex post facto* clause nor the *bill of attainder* clause appear to have any application in this case, and no argument in the memorandum would suggests that the due process clause is implicated in any way other than the alleged violation of the statute of limitations. Additionally, the failure to develop these arguments was pointed out in the Government's response brief, and no reply was filed, further suggesting that waiver is appropriate here.